**Dorothea A. MAGEL**

v.

### FEDERAL RESERVE BANK OF PHILADELPHIA.

**No. 91–2710.**

United States District Court, E.D. Pennsylvania.

Oct. 28, 1991.

Sheldon Tabb, Philadelphia, for plaintiff.

Shirley L. Coker, Federal Reserve Bank of Philadelphia, Philadelphia, Pa., for defendant.

## MEMORANDUM

KATZ, District Judge.

■ Plaintiff brought action under Section 5 of the Pennsylvania Human Relations Act ("Act"), 43 P.S. § 955(a). Plaintiff alleged that she was discriminated against because of her disability. Defendant removed action to this court's jurisdiction under Section 25(b) of the Federal Reserve Act, 12 U.S.C. § 632. Under 12 U.S.C. § 632, "any Federal Reserve bank which is a defendant in [suits of a civil nature] may, at any time before the trial thereof, remove such suit from a State court into the district court of the United States." Defendant had only submitted preliminary objections to the plaintiff's complaint before petitioning for removal on April 26, 1991. Removal was valid because no "trial" activity had occurred. *Cf., Manas y Pineiro v. Chase Manhattan Bank, N.A.,* 443 F.Supp. 418 (S.D.N.Y.1978) (removal untimely when it did not occur prior to litigation on the merits in the state courts); *Aktiebolaget Svenska Handelsbanken v. Chase Nat. Bank,* 69 F.Supp. 833 (S.D.N.Y.1947) (removal untimely and not allowed when defendant had already argued a motion for judgment on the pleadings).

Plaintiff was hired by defendant in 1980 as a statistical technician and became a supervisor in 1984. Plaintiff was responsible for supervising the process of collecting, editing and transmitting deposit data used by the defendant to calculate monetary aggregates. Sometime in 1984, the plaintiff developed a chronic asthmatic condition which became more severe as time passed. The asthmatic condition required her to be absent from her work on many days during the winter months. The plaintiff had been absent due to illness eighteen and one-half days in 1986, twenty-four days in 1987, fifty days in 1988 and thirty days in 1989 before she was discharged in December 1989. These absences exceeded plaintiff's customary allowance of twelve sick days a year.

In the Reserve Bank's policy on absenteeism, an employee is classified as a chronic absentee if the employee incurs more than 20 days of absences per year for two consecutive years. The policy states that an excessive chronic absentee record continuing into the third year may be grounds for termination. Before her termination, she was given an unsatisfactory performance evaluation in February 1989 and placed on a twelve month probation because of her excessive absenteeism. Under the terms of the probation, she was to use no more than six sick days and to work full seven and one-half hour days during the probationary period. In short, plaintiff failed probation by using more sick days than allowed.

After plaintiff received her unsatisfactory performance evaluation and notice of probation, she filed an internal EEO complaint on March 28, 1989. The defendant agreed to make the following accommodations: (a) flexible work hours—plaintiff would have been able to start work between 7:30 a.m. and 9:30 a.m. and work as late as 6:30 p.m. to enable her to work 7.5 hours; (b) plaintiff would have access to her pulmonary breathing apparatus twice daily for one-half hour intervals with no penalties against her attendance record; (c) medical excuses of up to two hours per month would be granted; (d) no change in performance rating or probationary status. On May 15, 1989, Plaintiff rejected these accommodations as a resolution to her complaint.

Plaintiff was absent thirty days in 1989 due to her illness. She was unable to satisfy the terms of her probation. She was terminated in December 1989 for excessive absenteeism. Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("Commission") alleging discrimination in employment because of her handicap. The Commission dismissed the complaint in February 1991. Defendant admits that there is no dispute as to the good quality of plaintiff's work when she was present. Both parties agree that the

termination stemmed from the absenteeism caused by her disability.

The Act states that,

It shall be unlawful discriminatory practice, unless based upon a bona fide occupational qualification ...: (a) For any employer because of the ... non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

43 P.S. § 955(a).

■ The burden is on the defendant to provide evidence of a legitimate, nondiscriminatory reason for the adverse employment action, after the plaintiff has established the four elements of a prima facie case: (1) plaintiff is a member of the protected class, (2) plaintiff was appointed to a position for which she was otherwise qualified, (3) plaintiff was discharged and (4) employer replaced her with someone with equal or lesser qualifications. *School District of Philadelphia v. Friedman,* 96 Pa. Commw. 267, 270, 507 A.2d 882, 883 (1986) (citing *General Electric Corp. v. Commw., Human Rel. Comm'n,* 469 Pa. 292, 304–05, 365 A.2d 649, 655–56 (1976)). However, "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *School Board of Nassau County, Florida v. Arline* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (interpreting analogous Rehabilitation Act of 1973, § 504, as amended, 29 U.S.C. § 794, from which Pennsylvania's Act is derived). Plaintiff's absenteeism, due to her disability, undercut her ability to perform in her position. Defendant has met its burden. Plaintiff's absenteeism interfered with the efficiency of her department.

■ Plaintiff was a supervisor and regular attendance was essential to her position. The Act defines "non-job related handicap or disability" as "any handicap or disability which does not substantially interfere with the ability to perform the essential functions of the employment which a handicapped person applies for, is engaged in or has been engaged in." 43 P.S. § 954(p). Section 955 ends with the proviso that it "shall not be construed to prohibit ... the dismissal of a person who is not able to function properly in the job applied for or engaged in." The Act does not bar unequal treatment on the basis of a *job related* handicap or one which interferes with the ability to perform essential functions of the job. *Laws v. Commw., Philadelphia County Board of Assistance, Department of Public Welfare,* 50 Pa. Commw. 340, 345, 412 A.2d 1377, 1380 (1980). *See also, Strathie v. Department of Transp.* 716 F.2d 227, 231 (3rd Cir.1983) (interpreting analogous Rehabilitation Act; "A handicapped individual who cannot meet all of a program's requirements is not otherwise qualified if there is a factual basis in the record reasonably demonstrating that accommodating that individual would require either a modification of the essential nature of the program, or impose an undue burden....").

■ Here, plaintiff's inability to meet attendance standards is job-related. Regular attendance was an "essential function" of her position. The Act allows an employer to consider the requirements of a position when considering an employee's qualification for that position. This supervisor's absences reduced output, increased the need for overtime, adversely affected the staff's productivity and reduced the quality and timeliness of her work unit's output. Morale of the staff members was affected. Her staff cut corners to accommodate plaintiff's absences. These factors made accommodation impractical. *Cf., Perez v. Philadelphia Housing Authority* 677 F.Supp. 357, 361 (E.D.Pa.1987) (interpreting analogous Rehabilitation Act; defendant liable when evidence indicated that accommodation was not expensive nor impracticable).

■ The Pennsylvania Code ("Code"), promulgated under the Act, does state that "[a]n employer shall make reasonable ac-

commodations by modifying a job, including but not limited to modification of duties, scheduling, amount or nature of training, assistance provided, and the like, provided that such modification shall not impose an undue hardship." 16 Pa.Code § 44.14(a). However, the Code continues that "[n]othing in this section shall be construed to require application of different production, *attendance,* or disciplinary standards for the handicapped or disabled worker." 16 Pa.Code § 44.14(b) (emphasis added). The Commission notes that this subsection is "subject to the general requirement to make reasonable accommodation." 16 Pa.Code § 44.14 (comment). The Commission defines reasonable accommodation as "an evolving concept that changes with the state of technology, and is probably best left to construction on a developmental, case-by-case basis." 16 Pa. Code § 44.4 (comment).

In the present case, reasonable accommodation was not possible. Plaintiff's repetitive absenteeism caused an undue hardship to the defendant. The defendant needed a supervisor who is regularly present, to offer continuity for supervision and accessibility for consultation. The plaintiff simply could not fulfill the essential functions of the position that she held. Reasonable accommodation was not possible because of the extensive absences. "An employer has a substantial interest in the matters of the absenteeism ... of its employees." *Philadelphia Electric Co. v. Com., Pa. Human Rel.,* 68 Pa.Commw. 212, 227, 448 A.2d 701, 708 (1982) (not all discrimination is unlawful).

■ However reasonable accommodation is defined, it does not include creating a new job. Essentially the accommodation plaintiff wants is a job that allows her to work eight months and not work during the remaining four winter months. Defendant is not required to create for plaintiff a position that allows long periods of regular absences. *Jenks v. Avco,* 340 Pa.Super. 542, 550, 490 A.2d 912, 917 (1985) (ruling against defendant's arguments of undue hardship to allow disabled plaintiff to ride a cart on the job; "The court has simply not created a new job description."). "It is elemental that one who does not come to work cannot perform *any* of his job functions, essential or otherwise." *Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn. 1986) (interpreting analogous Rehabilitation Act; plaintiff was terminated for absenteeism). *See also, Anderson v. Dep't of Navy,* 1989 WL 108220, at 5, 1989 U.S. Dist. LEXIS 11146, at 11 (E.D.Pa.) (interpreting Rehabilitation Act; "Reasonable accommodation does not extend beyond the position...."; citing *Prewitt v. United States Postal Service,* 662 F.2d 292, 310 (5th Cir.1981)).

■ Although the plaintiff did offer to accept certain lower level positions, she still would have had absenteeism problems. The defendant is not required to install the plaintiff in a lower level position when absenteeism would still occur and interfere with the efficient performance of the work unit. In fact, defendant did offer a possible temporary position that was part-time but plaintiff rejected it. Defendant was not required to do more. An employer is not required to find alternative employment for an employee who cannot perform his job unless the employer normally provides such alternative employment under its existing policies. *Coley v. Secretary of Army,* 689 F.Supp. 519, 524 (D.Md.1987) (interpreting Rehabilitation Act; discrimination found when defendant broke its own policy to find alternative positions for handicapped employees and employee offered to take any job; citing *Carter v. Tisch,* 822 F.2d 465, 467–68 (4th Cir.1987) (reasonable accommodation does not require an alternative assignment)). *See also, Bey v. Bolger,* 540 F.Supp. 910, 927 (E.D.Pa.1982) (interpreting Rehabilitation Act; "The Postal Service is not required under the law to offer 'light duty status' positions to every person who applies because of the individual's handicap.").

Plaintiff can obtain redress only with respect to the position that she actually held. Plaintiff basically sought a new position from defendant, a position she herself described as not as "especially difficult" as her own. There was no such position for

plaintiff. Defendant had no obligation to create one or to find and train another employee to work the four or so months of the year that plaintiff wanted for her leave.

■ Furthermore, Congress intended the defendant to have power "to dismiss at pleasure" its officers or employees. 12 U.S.C. § 341, Fifth. It is an employer at will. While this does not allow discriminatory employment actions, Congress conferred no special employment tenure on defendant's employees. *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1098 (9th Cir.1981). The Federal Reserve Bank retains the same discretion concerning its employment practices as other employers. "It is not for the plaintiff, nor for a jury or this court, to re-define the employer's job requirements." *Fiscella v. General Accident Insurance Co.,* 1983 WL 641 at 3 (E.D.Pa.1983) (interpreting the Act; accountant unwilling to work overtime during tax season can be discharged). In addition, defendant can point to plaintiff's own doctor as stating that plaintiff should be employed at home in a controlled environment rather than at a regular workplace. *Action Industries v. Com., Human Rel. Comm'n,* 102 Pa.Commw. 382, 388, 518 A.2d 610, 613 (1986) (employer did not discriminate when it reasonably relied upon the advice of a medical expert).

■ Finally, the case here does not fall within the prohibitions of section 44.15 of the Code, which prohibits discrimination on the basis of a present handicap which might become job-related. Section 44.15 also prohibits discrimination on the basis of a past handicap which might recur. In the present case, however, the problem of absenteeism was present and continuing. Here, a probation period was attempted. Some extra medical considerations were offered. This is not the case of an employer discharging an employee just days after learning the employee had AIDS. *Cain v. Hyatt,* 734 F.Supp. 671, 683 (E.D.Pa.1990) ("The duty of accommodation dictated that [defendant] could not remove the plaintiff from the position ... without affording him an opportunity to return to work and endeavor to satisfy its demands."). *See*

*also, Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 879 n. 10 (9th Cir.1989) (interpreting Rehabilitation Act; granting a second leave might not be necessary if an accommodation had been attempted and was unsuccessful).

■ While the employer bears the burden of persuading the court that it provided reasonable accommodation or that it was unable to accommodate, once it presents credible evidence of either, the plaintiff has the burden of going forward with evidence concerning possible accommodations to rebut the employer's evidence. *Treadwell v. Alexander,* 707 F.2d 473 (11th Cir.1983); *Jasany v. United States Postal Service,* 755 F.2d 1244, 1251 (6th Cir.1985); *Carter v. Bennett,* 651 F.Supp. 1299, 1300–01 (D.D.C.1987) (all interpreting Rehabilitation Act). Plaintiff failed to carry that burden. This case does not deal simply with a dollar amount cost of accommodation but rather with the "essential function" of the work position. *Cf., Nelson v. Thornburgh,* 567 F.Supp. 369, 379 (E.D.Pa.1983) (interpreting Rehabilitation Act; when defendant produced no evidence that accommodation entailed substantial modification of the work position or new administrative burdens, all questions collapsed into the issue of dollar cost to provide half-time readers to blind full-time workers).

This is a hard case. It should not be used to create bad law. Plaintiff performed her tasks well when she was there. However, her absences created an intolerable burden on the reasonable expectations of the employer. Her absences were neither her fault nor her employer's. The job required her to be present to supervise. The job could not be adequately performed from home, by telephone, from the hospital or by substitutes. Plaintiff wants a permanent seasonal job to accommodate her asthma. She was unable to function as a supervisor full time. Now she has been replaced. The law does not require an employer to turn this full time position, involving supervision of a statistics division where continuity is essential, into a seasonal one to accommodate this employee's ill-

ness. Nor does the law require this employer to find and train a part-time new employee to work the portion of the year that plaintiff did not perform the job. Plaintiff took the rigid position at the time of the underlying events that she wanted a guarantee of full-time employment that accommodated her absences. This the employer did not accommodate nor was it legally required to accommodate.

Defendant's handling of this personnel problem and the internal EEO complaint can be characterized as incompetent in its failure to communicate with plaintiff. However, the defendant did not discriminate under the Act.

Judgment is for defendant.